IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>Vs.<br><br>JEFFREY WALTER GRAY,<br><br>Defendant. | Case No: 4:24-cr-030<br><br><br>DEFENDANT'S SENTENCING MEMORANDUM |

COMES NOW the Defendant, through undersigned counsel, and in support of his recommendations for sentencing states the following:

## **INTRODUCTION**

On March 20, 2024, an eight count indictment was filed in the Southern District of Iowa charging the Defendant, Jeffrey Walter Gray, with seven counts of Sexual Exploitation and Attempted Sexual Exploitation of a Child in violation of 18 U.S.C. § 2251(a), 2251(e) and one count of Possession of Child Pornography in violation of 18 U.S.C. § 2252A (a)(5)(B) and 2252A(b)(2). On August 30, 2024, the Defendant pled guilty to Counts Two and Eight of the Indictment. To date, this court has not accepted the defendant's plea and adjudicated him guilty.

A Draft Presentence Investigation Report (PSR) was completed by the U.S. Probation Office and filed on October 29, 2024. The Defendant filed a list of objections to the PSR.

## **FACTS**

Prior to Mr. Gray's arrest, he was a beneficial member of society. At the age of eighteen, Mr. Gray enlisted in the navy, and was stationed in several parts of the United States and overseas in Libya. See PSR, para. 135. Mr. Gray was honorably discharged at the rank of E5. See PSR, para. 177. Mr. Gray was an active volunteer with the Special Olympics of Iowa, as his son was a participant. See PSR, para. 137. Mr. Gray's criminal history computation amounts to a score of zero. PSR, para. 126-127. Following his time in the Navy, Mr. Gray continued to be a

1

contributing member of society. Since 1992, Mr. Gray has been employed in the financial services industry as a project manager and doing consulting. He worked for companies such as Wells Fargo, Nationwide Insurance, Meredith Corporation, Farm Bureau Financial Services and Principal Financial Group. During this time, Mr. Gray also operated a photography business.

Mr. Gray grew up in a typical midwestern town, and was his home was void of any abuse or neglect. See PSR, paras. 134. However, his parents divorced when he was 18 years old, which Mr. Gray admits did not have an adverse impact on him. PSR, para. 135. Mr. Gray maintains a relationship with majority of his siblings and his mother, who is 92-years old all of whom remain supportive. See PSR, para. 141-145. Since Mr. Gray's indictment. Gray's wife, Traci, has endured a stroke and four cardiac episodes related to the stress of the defendant's current prosecution. See PSR, para. 149. Traci understands the severity of the crimes charged but remains supportive of her husband. Mr. Gray has not reported any substance abuse issues nor any treatment programs, although admits to recreational marijuana use once. PSR, para. 162-164.

In consideration of Mr. Gray's lack of criminal history, coupled with the § 3553(a) factors, Mr. Gray's suggests that the mandatory minimum sentence of imprisonment of 180 months would be "sufficient, but not greater than necessary" to meet the objectives of § 3553(a). Mr. Gray poses no danger to the public, has self-refrained from the conduct accused, as the allegations date nearly 10 years ago and, most notably the alleged conduct only occurred during a 30-month period of time. Mr. Gray has been sufficiently deterred from any future criminal conduct. Saddling Mr. Gray with a lengthy term of imprisonment would serve no purpose but to punish Mr. Gray needlessly.

## LAW AND ARGUMENT

The sentencing proceeding is a 3-step process that begins with a calculation of the Sentencing Guidelines range. *United States v. Braggs*, 511 F.3d 808, 812 (8th Cir. 2008). The court then makes "an individualized assessment based on the facts presented" while also

considering all of the factors listed in 18 U.S.C. § 3553(a). *Gall v. United States*, 552 U.S. 38, 59-60; 128 S. Ct. 586, 597; 169 L. Ed. 2d 445, 457 (2007). The final step allows the district court substantial latitude to vary from the Sentencing Guidelines by comparing them with the §3553(a) factors and presenting support for variance and the extent thereof. *See United States v. Ruelas-Mendez*, 556 F.3d 655, 657 (8th Cir. 2009); *United States v. Feemster*, 572 F.3d 455, 464 (8th Cir. 2009); *Braggs*, 511 F.3d at 812.

1. <u>Sentencing Guidelines Calculation</u>

The first step in the sentencing process involves the calculation of the Sentencing Guidelines range, beginning with an assessment of the defendant's criminal history and the application of relevant offense-specific enhancements and deductions.

In determining the appropriate sentencing guideline for Mr. Gray's violation of 18 U.S.C. §§ 2251(a) and 2251(e), the presentencing report applies U.S.S.G. § 2G2.2(a)(1) establishing a base offense level of 32. U.S.S.G. § 2G2.1(a). Subsection (b) of the same section identifies specific characteristics of the offense that may warrant sentencing enhancements. Mr. Gray received a two-level enhancement for the offense involving a minor who had attained the age of twelve years but not attained the age of sixteen years. See PSR, para. 68. Defendant also received a two-level enhancement for the offense involving a sexual act or sexual contact. See PSR, para. 69. As Mr. Gray was charged with several offenses, in accordance with USSG §3D1.4(a), one unit is assigned to the group with the highest offense level, and an additional unit is assigned for each group that is equally serious or from one to four levels less serious, and one half unit is assigned to any group that is five – eight levels less serious than the highest offense. An offense that is nine levels or more below the highest offense level are not assigned a unit in the grouping process for multiple counts. U.S.S.G. § 3D1.4. Due to the enhancements listed, the adjusted offense level was determined to be 45. See PSR, para. 67-74. However, the statutorily authorized maximum sentence of 30 years is less than the minimum of the applicable guideline range,

therefore, the guideline maximum term of imprisonment is 360 months, or 30 years. See PSR, para. 67-74. The minimum term of imprisonment is 15 years. See PSR, para. 186.

Additionally, determining the appropriate sentencing guideline for Mr. Gray's violation of 18 U.S.C. § 2252A (a)(5)(B) and 2252A(b)(2), the presentencing report incorrectly applies U.S.S.G. § 2G2.1(a) which enhances the base offense level from 18 to 32. This enhancement under U.S.S.G § 2G2.2(c)(1) applies if the offense involved causing transporting, permitting, or offering or seeking by notice or advertisement, a minor to engage in sexually explicit conduct for the purpose of transmitting a live visual depiction of such conduct.

The government's reliance on the enhancement under USSG §2G2.1 is misplaced, as the Defendant did not "offer or seek by notice or advertisement" to engage a minor in sexually explicit conduct for the purpose of producing or transmitting a visual depiction of such conduct. The government admits this was only a part of, Wicked Imagery, Mr. Gray's photography business. See PSR, para. 20-21. This was not the entirety of Mr. Gray's photography business, and these individualized photo sessions of dance and cheer only accounted for about five percent of Mr. Gray's business income.

The government's argument appears to rely on the Defendant's professional use of social media, more specifically Facebook, to post photography services. However, this argument ignores the fact Mr. Gray's spouse, Traci West-Gray, was the primary custodian of this account. Moreover, Ms. West-Gray was tasked with scheduling appointments for individuals inquiring as a result of Facebook posts. Mr. Gray had very little to no control over what sessions were booked, and the posts were being made. Additionally, the Facebook posts were directed towards parents who would book and pay for the photography sessions. No minors responded to Facebook posts or booked photography sessions.

These posts, which included images of teens, were made to showcase limited non-explicit industry standard. These posts included images of teen dancers and cheerleaders as part of

4

promotional materials for individualized photo sessions — a standard marketing practice in the commercial photography industry that were only offered by Mr. Gray's photography studio over a two-year time period. Importantly, these images were taken and shared with the full knowledge and consent of the parents, and legal guardians. There is no evidence that these posts solicited, encouraged, or sought minors to engage in sexually explicit conduct, nor did the defendant advertise any illegal or inappropriate activity. The posts were aimed at promoting individualized photo sessions in compliance with his professional obligations and bore no connection to any effort to solicit or involve minors in sexually explicit conduct.

Critically, the photos featured in these advertisements were not sexualized, nor were they created or shared with any improper purpose. Rather, they were typical examples of marketing for legitimate photography services. There is no evidence that the defendant's advertisements, either implicitly or explicitly, sought to engage minors in unlawful conduct or otherwise deviated from the standard practices of professional photographers in similar fields. As such, the factual record does not support the heightened culpability required for the enhancement under §2G2.1, and its application would overstate the defendant's conduct and intent.

Moreover, as the location of the security cameras in Mr. Gray's photography studio were placed in public areas that were not likely to capture sexually explicit conduct, as defined under 18 U.S.C. § 2256, it could not be expected that the posts would solicit this conduct. Here, no evidence exists that the defendant made any public notice, advertisement, or solicitation aimed at minors, nor did the defendant create, disseminate, or respond to any communication that could be reasonably interpreted as such. Additionally, the Government fails to acknowledge that less than 5% of any security footage contained persons under the age of 18 and was not intended to capture footage of sexually explicit conduct, if there were individuals under the age of 18 obtained within the footage as the security cameras were placed in public areas, not in changing areas as the PSR indicates.

It has also been stated by several individuals during their interviews with law enforcement that Mr. Gray would not be in the same area that models for his photography would be changing. Mr. Gray was located on another floor of the photography studio while these individuals would change, and took photos on the lower level as well, having very little to do with where individuals were changing. Whether or not a private dressing room; where nothing would have been captured as there were no security cameras placed in private changing rooms, or if a public open area was used for the models to change, where security cameras were located, it was not something that was within the control of Mr. Gray and he was not around to know if individuals were changing in public areas or not.

The Probation Office's improper application of the enhancement under U.S.S.G. § 2G2.1 has significantly impacted the calculation of the Defendant's total offense level. If this enhancement were removed, the corresponding base offense level for paragraphs 75, 81, 87, 93, 99 and 105 would be properly reduced by 12-14 points. See PSR, para. 75, 81, 87, 93, 99, 105. Under U.S.S.G. § 3D1.4(c), offenses that differ by nine or more levels from the highest offense level are disregarded for grouping purposes as they do not contribute to the total offense level calculation. U.S.S.G. § 3D1.4(c). This provision reflects the Guidelines' intent to prevent substantially less serious conduct from disproportionately affecting a Defendant's sentence is consistent with the Guidelines' objective of ensuring that substantially less serious conduct does not unduly increase a defendant's sentence.

When properly applying U.S.S.G. § 2G2.2(a)(1), the Adjusted Offense Levels for Counts One – Seven are as follows: Count One – Adjusted Offense Level of 20, Count Two - Adjusted Offense Level of 38. See PSR, para. 74. Count Three - Adjusted Offense Level of 18, Count Four - Adjusted Offense Level of 18, Count Five -Adjusted Offense Level of 20, Count Six - Adjusted Offense Level of 22, Count Seven - Adjusted Offense Level of 20.

After determining the Adjusted Offense Level for each Count of the indictment, you must determine the Combined Adjusted Offense Level. The Combined Adjusted Offense Level is determined by taking the offense level applicable to the group with the highest offense level and increasing the offense level by the amount indicated in the table at USSG § 3D1.4. Count Two has the highest Adjusted Offense Level. See PSR, para. 67-74. Count Two has a Base Offense Level of 32. U.S.S.G. § 2G2.1. A two-level enhancement for involving a minor who had attained the age of 12 but not the age of 16. U.S.S.G. § 2G2.1(b)(1)(A). A two-level enhancement for the offense involving the commission of sexual act or sexual contact. U.S.S.G §2G2.1(b)(2)(A). Lastly, a two-level enhancement because the defendant was a parent, relative or legal guardian of the minor involved in the offense, of if the minor was otherwise in the custody, care or supervisory control of the defendant. U.S.S.G. §2G2.1(b)(5). The Total Adjusted Offense Level for count one is 38. See PSR, para. 74.

The Total Offense Level was increased by five levels pursuant to the number of units assigned by the amount indicated in the table at USSG §3D1.4. See PSR, para. 113. Units are assigned pursuant to USSG § 3D1.4(a), (b), and (c). One unit is assigned to the group with the highest offense level. One additional unit is assigned for each group that is equally serious or from one to four levels less serious. One-half united is assigned to any group that is 5 to 8 levels less serious than the highest offenses level. Any groups that are 9 or more levels less serious than the group with the highest offense levels are disregarded. See PSR, para. 111.

These additional units assigned under U.S.S.G. § 3D1.4 were improperly calculated in accordance with the U.S.S.G §2G2.1(a)(1) with a base level of 32, rather than U.S.S.G. § 2G2.2(a)(1), which would assign a base level of 18 to Counts One and Three - Seven. With proper application of U.S.S.G. §2G2.2(a)(1), the Total Offense Level should be reduced by five levels as Counts One and Three – Seven would have Adjusted Offense Levels less than 9 levels below the highest offense level and should therefore be disregarded in calculating the Total

7

Offense Level. Therefore, the Total Offense Level should be 40 rather than 43, *See* Chapter 5, Para A (comment n. 2) (in those rare instances where the total offense level is calculated in excess of 43, the offense level will be treated as a level 43.)

2. Variance from the Calculated Sentencing Range

Following the calculation of the sentencing guideline range, an analysis of the facts of the case must be conducted to determine "any appropriate departures from the guidelines." *United States v. Shannon*, 414 F.3d 921, 923 (8th Cir. 2005). The Court then makes "an individualized assessment based on the facts presented" while also considering all of the factors listed in 18 U.S.C. § 3553(a). *Gall*, 552 U.S. at 59-60; 128 S. Ct. at 597; 169 L. Ed. 2d at 457 (2007). A departure is simply an assertion that the Total Offense Level is incorrect or inappropriate and should be altered to accurately fit the facts of the case. See *United States v. Chase*, 451 F.3d 474, 482 (8th Cir. 2006). A variance, on the other hand, is an analysis of the following 3553(a) factors from which the Court may vary the sentence regardless of the total offense level or the criminal history category based on the factors of 3553(a). See *United States v. Vandebrake*, 771 F. Supp. 2d 961, 999 (N.D. Iowa 2001). Mr. Gray claims that, following an appropriate guidelines calculation, a variance herein is warranted. The purpose of this individualized assessment is to determine whether a variance is appropriate in the matter at hand. The primary directive in section 3553(a) is for the sentencing court to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph 2." Section 3553(a)(2) states that such purposes are:

    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for offense;

    (B) to afford adequate deterrence to criminal conduct;

    (C) to protect the public from further crimes of the defendant; and

    (D) to provide the defendant with needed educational or vocational training, medical care, or the correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2) (2020).

In determining the minimally sufficient sentence, section 3553(a) further directs the sentencing courts to consider the following factors:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established;

(5) any pertinent policy statement;

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a) (2020). The Court is granted a great deal of discretion in making a variance determination. *See Ruelas-Mendez*, 556 F.3d at 657 (8th Cir. 2009); *Feemster*, 572 F.3d at 464 (8th Cir. 2009); *Braggs*, 511 F.3d at 812. Each consideration pertinent to this case will be addressed in turn.

A. <u>Nature and Circumstance of the Offense and History/Characteristics of the Defendant</u>

Mr. Gray is a 62-year-old man who has benefitted society. He has been an active member of the workforce and was employed for the majority of his lifetime without incident. Additionally, Mr. Gray enjoys the continued familial support of those around him. His immediate family is aware of his current position and remains supportive of him. Mr. Gray has worked hard and persevered throughout his life to attain meaningful goals in his professional life. He has proven that he can be a positive and contributing member to the community. While the nature of this offense is undoubtedly serious, as is inherently suggested by the codification of

the criminal act at issue, it can be balanced with the history and characteristics of the defendant. See *United States v. Jacob*, 631 F. Supp. 2d 1099, 1116-18 (N.D. Iowa 2009).

In *Jacob*, the Court found that an evaluation of the nature of the offense was significantly influenced by enhancement in the sentencing guidelines including distribution, pattern of conduct and sadistic/masochistic conduct. 631 F. Supp. 2d at 1116-1118. The Court further considered the Defendant's lack of criminal history "to be substantially mitigating" *Id.* at 1117. The nature and circumstances of this offense are, without a doubt, serious. Mr. Gray recognizes, acknowledges, and appreciates that fact.

The nature and circumstances in this case can be balanced with his lack of criminal history and his characteristics as was considered in *Jacob*. *See id.* Furthermore, in *Jacob* the court found "lack of significant criminal history and his shame…also mitigate the term of imprisonment necessary to deter him from future conduct." *Id.* at 1118-19. From Mr. Gray's actions in accepting the plea agreement on counts two and eight within the indictment and accepting responsibility to those who have been hurt by the alleged conduct he also displays these characteristics and thus it should be reflected in his sentencing. In addition, Mr. Gray enjoys the privileged support of his family members.

In light of the circumstances pertaining to Mr. Gray, a sentence at the mandatory minimum sentence of 180 months, balanced with a term of supervised release above the minimum required term of five years, e.g., 10 years, would provide adequate deterrence and punishment while also avoiding an unnecessarily lengthy period of incarceration.

### B. Outside of the Heartland of Production of Child Pornography Cases

Mr. Gray's conduct is distinguishable from other cases prosecuted under 18 U.S.C. § 2251(a), (e), where courts have affirmed convictions based on clear and unequivocal evidence of intent to produce lewd or sexually explicit material. 18 U.S.C. § 2251(a), (e).

This case is readily distinguishable from *United States v. Wallenfang*, where the defendant engaged in deliberate and egregious conduct to produce child pornography. In *Wallenfang*, the defendant participated in online fetish groups, purchased stockings and pantyhose for his minor daughter to wear, and directed her to pose in ways that exposed her genitalia for the purpose of creating and distributing child pornography. *United States v. Wallenfang*, 568 F.3d 649 (8th Cir. 2009). The court found that the defendant's active orchestration of sexually explicit scenes and his distribution efforts left no doubt as to his intent to produce lascivious material. Conversely, Mr. Gray's actions do not involve grooming, posing, or staging minors in any way that could be construed as sexually explicit.

Finally, Mr. Gray's lack of direct interaction with the minors further distinguishes his conduct from the defendant in *Wallenfang*. Unlike that case and other similar cases, Mr. Gray did not provide explicit instructions to the minors regarding where they should undress or otherwise manipulate the circumstances to create lewd material.

C.  Need for the Sentence Imposed

The purpose of sentencing in criminal offenses is four-fold including retribution, deterrence, incapacitation, and rehabilitation to establish a "legitimate penological justification" for the sentence imposed. *Graham v. Florida*, 560 U.S. 48, 71 (2010). Mr. Gray recognizes each of these is larger than just his case but is also specifically tailored to address him as an individual.

One purpose of sentencing is deterrence, which includes general community deterrence and specific individual deterrence. Specifically, the theory of deterrence suggests that the sentence imposed on one person will deter others as well as that particular individual from engaging in similar conduct in the future. Mr. Gray has directly affected the lives of his family, friends, and community with his choices. Additionally, Mr. Gray's career is inevitably ruined as a result of the crimes charged and has had a financial state ruined as well. As these crimes

alleged became public, Mr. Gray lost several friends, and family members. It can be reasonably anticipated that each of those individuals that have been affected has seen the impact that the types of choices Mr. Gray made can have on a person, his family, and his community. Mr. Gray's mere involvement with this process has provided him with an adequate level of deterrence from future wrongdoing of this or any other type. Additionally, the required minimum prison term and required term of supervised release will adequately prevent Mr. Gray from future involvement with activity of this nature. General deterrence was accomplished upon Mr. Gray appearing in court and entering into a guilty plea to two counts within the indictment against Mr. Gray.

Beyond specific deterrence of the Defendant, the Court will rightfully be concerned with general deterrence of the community, rehabilitation of the Defendant and punishment for the wrongs committed. Mr. Gray's incarceration will adequately convey to potential perpetrators that this type of conduct, even if occurring for the very first time, will not be tolerated.

Mr. Gray has and will undoubtedly continue to be punished. Pursuant to Federal Rule of Criminal Procedure (11)(c)(1)(C) the parties have agreed to a term of imprisonment not to exceed 360 months.

Incapacitation, or protection of the public, is of obvious concern. This Court has every incentive to pass down a sentence that would protect the public from another instance such as this. However, a lengthy period of imprisonment would be counter effective by depriving society of the contributions of Mr. Gray and is not necessary to afford adequate deterrence from future criminal conduct as Mr. Gray has refrained from the allege conduct on his own volition for nearly 10 years. Moreover, there were several videos that the government included into evidence that had not been viewed by Mr. Gray after cessation and were immediately put into a trash file.

A sentence within the guidelines range is not necessary in this case. Mr. Gray contends a downward variance from the Sentencing Guidelines' recommended sentencing range and a focus

on the imposition of a period of supervised release with specific conditions accomplishes the goals of the penal system and support the identified theories of punishment therein.

3. <u>Downward Variance Determination</u>

In determining whether to vary from the Sentencing Guidelines, the court must consider the above-mentioned factors and "impose a sentence sufficient, but not greater than necessary." 18 U.S.C. § 3553(a). While there must exist a reason to depart from the Sentencing Guidelines, the "high volume of downward variance is strong testimony to the fact that the Guidelines cannot be routinely applied in a fair way when it comes to this particular crime." *United States v. Buesing*, 615 F.3d 971, 974 (8th Cir. 2010). (referring to possession of child pornography). Additionally, the Court should consider the principles articulated in *United States v. Gall*, 552 U.S. 38 (2007), where the Supreme Court emphasized that sentencing courts must conduct an individualized assessment of the defendant's circumstances under 18 U.S.C. § 3553(a). In *Gall*, the Court held that district courts have broad discretion to impose sentences outside the advisory guidelines range when justified by the specific facts of a case. Here, mitigating factors such as the defendant's lack of prior criminal history, demonstrated remorse, efforts at rehabilitation, and strong familial support justify a variance. These factors align with § 3553(a)'s directive to impose a sentence sufficient, but not greater than necessary, to achieve the goals of sentencing. A downward variance would appropriately balance the severity of the offense with the defendant's unique characteristics and the interests of justice.

In that case, the defendant became involved in a drug distribution conspiracy, specifically manufacturing and distributing ecstasy. However, Gall voluntarily withdrew from the conspiracy after a brief period, moved away, and led a law-abiding life for several years. Despite these mitigating circumstances, federal sentencing guidelines recommended a term of imprisonment of 30 to 37 months. The district court departed significantly from the guidelines, imposing a

probationary sentence based on Gall's rehabilitation efforts, lack of criminal history, and exemplary conduct post-offense. The Supreme Court emphasized that district courts are required to consider the factors in 18 U.S.C. § 3553(a) and to impose a sentence sufficient but not greater than necessary to fulfill sentencing goals. A district court is permitted to vary from the guideline range when warranted by the specifics of the case, and appellate courts should not substitute their judgment simply because they would have imposed a different sentence. The Court rejected the notion of requiring extraordinary circumstances to justify significant deviations from the guidelines, reinforcing the principle that sentencing decisions should be individualized and flexible.

     Mr. Gray was charged with production activity that occurred in a 30-month window ranging from January 2013 to August 2015. See PSR, para. 1. This alone is sufficient to show that Mr. Gray voluntarily discontinued the alleged activity, while maintaining his role as an active and participating member of society. As the court has reflected that a downward variance should not be solely based on the notion of extraordinary circumstances, it should rather, Mr. Gray's sentencing should be reflective upon his individualized circumstances and flexible. Based on this information, upon a calculation of the sentencing range based on his perspective as detailed above, his individualized circumstances warrant a sentence at 180 months of imprisonment.

## CONCLUSION

     The Defendant respectfully requests that this Court grant him a downward variance. Mr. Gray suggests that a sentence of imprisonment of 180 months would be "sufficient, but not greater than necessary" to meet the objectives of § 3553(a). Mr. Gray poses no danger to the public, and he has not engaged in the prohibited activity for nearly a decade prior to the indictment, which has been a sufficient deterrent from any future criminal conduct.

RESPECTFULLY SUBMITTED:

_____/s/ Aaron D. Hamrock_____
Aaron D. Hamrock (AT0003107)
McCARTHY & HAMROCK, P.C.
1200 Valley West Drive, Ste. 400
West Des Moines, IA 50266
Tel. No. 515/279-9700
Facsimile No. 515/279-8355
Email: aaron@mccarthyandhamrock.com
ATTORNEY FOR DEFENDANT.

Original Filed Electronically.

Electronically Copied to:

Kyle Essley
110 E. Court Avenue
Suite 286
Des Moines, Iowa 50309
Kyle.essley@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on January 2, 2025, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

By: ☐ U.S. Mail        ☐ FAX
    ☐ Hand Delivered   ☐ Overnight Courier
    ☐ Federal Express  ☒ Other: Electronically

Signature: _____/s/ Amanda M. Neff_____