IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> v. ) <br> ) <br> ) <br> JEFFREY WALTER GRAY, ) <br> ) <br> Defendant. ) <br> ) | No. 4:24-cr-030 <br><br> UNITED STATES' <br> SENTENCING MEMORANDUM |

## INTRODUCTION

When he was in his forties, Defendant took photographs of his teenage girlfriend and her two sixteen-year-old friends engaged in sex acts. In his fifties, Defendant placed a hidden camera in the bathroom of his home, secretly recording a fourteen-year-old child in his custody naked and masturbating. For another two years, Defendant used his photography business, Wicked Imagery, to prey on scores of other minor females. He put hidden cameras in the changing areas of his photography studios, where dozens of children—some as young as seven and eight years old—unknowingly exposed their genitals, anuses, breasts, and pubic areas to his cameras. Many of those children have yet to be identified.

Over the years, Defendant sexually exploited or attempted to sexually exploit minor females on well over one hundred occasions, and he compiled a library of self-made and internet-based child pornography of over ten thousand files.

Sentencing is scheduled for Wednesday, January 8, 2025, at 10 a.m. This Court should sentence Defendant to 360 months in prison.

1

**TABLE OF CONTENTS**

Introduction ............................................................................................... 1

I.    Background ..................................................................................... 2

II.   Defendant's Objections to the Final PSR's Factual Allegations
      Should Be Denied ............................................................................ 5

III.  Defendant's Objections to the Guidelines Calculations of the
      Final PSR Should Be Rejected ...................................................... 10

IV.   Forfeiture Should Be Ordered and if Any Victim Requests
      Restitution, it Should Be Awarded ................................................ 15

V.    The Special Condition of Supervised Release Concerning
      Defendant's Access to the Internet Should Be Imposed ............... 15

VII.  The 18 U.S.C. § 3553(a) Factors Support a 360-Month
      Term of Imprisonment ................................................................... 16

      Conclusion ..................................................................................... 20

**I.     BACKGROUND**

A criminal complaint was issued on February 20, 2024, alleging that Defendant had committed the offenses of (a) sexual exploitation and attempted sexual exploitation of a child, and (b) possession of child pornography (ECF 1). Defendant was arrested the following day. (ECF 5).

On March 20, 2024, a grand jury returned an eight-count Indictment, which contained the following charges:

- Counts 1 through 7 alleged Defendant, from January 2013 through June 2015, sexually exploited or attempted to sexually exploit seven different children, in violation of 18 U.S.C. § 2251(a), (e); and

- Count 8 alleged Defendant possessed child pornography on November 14, 2023, in violation of 18 U.S.C. § 2252A(a)(5)(B), (b)(2).

(ECF 16). The Indictment also included a notice of forfeiture for all child pornography Defendant possessed and all property used to commit the charged offenses, including specifically a black Compatly external hard drive. (*Id.*).

On August 30, 2024, pursuant to a written Plea Agreement, Defendant entered guilty pleas to Counts 2 and 8 of the Indictment. (ECF 48, 49). In exchange, the government agreed at sentencing to dismiss Counts 1, 3, 4, 5, 6, and 7. (ECF 49, at 1-2, ¶¶ 1-2). The parties also agreed pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) that this Court at sentencing "should impose a term of imprisonment of no less than 180 months and no more than 360 months." (*Id.* at 9, ¶ 15). Defendant, further, consented to the forfeiture of the property identified in the Indictment. (*Id.* at 9-10, ¶ 16).

To date, this Court has not accepted the Plea Agreement. At Defendant's change-of-plea hearing, this Court indicated that it would make a "final determination" whether to accept the Plea Agreement "following review of the final PSR." (ECF 48).

A draft presentence investigation report (PSR) was filed on October 29, 2024. (ECF 53). The government submitted one objection, suggesting certain of Defendant's actions should be considered relevant conduct, along with two clarifying remarks. (ECF 56). Defendant lodged over forty objections to the factual statements in the draft PSR and to the advisory guidelines calculations, though Defendant did not indicate what he believed the advisory guidelines range should be. (ECF 57).

A final PSR was filed on December 20, 2024. (ECF 59, hereinafter the "Final PSR"). The Final PSR calculates Defendant's advisory guidelines range as follows:

**Group 1 (Count 2, Minor Victim #2)**

| | |
|---|---|
| Base (UGGS §2G2.1(a)) | 32 |
| Minor 12 to 15 years old (§2G2.1(b)(1)(B)) | +2 |
| Sex Act/Contact (§2G2.1(b)(2)(A)) | +2 |
| Custody, care, supervisory control (§2G2.1(b)(5)) | +2 |
| Adjusted Offense Level | 38 |

**Group 2 (Count 8, Minor Victim #1, pseudo count)**

| | |
|---|---|
| Base (§2G2.1(a) via cross reference §2G2.2(c)) | 32 |
| Minor 12 to 15 years old (§2G2.1(b)(1)(B)) | +2 |
| Adjusted Offense Level | 34 |

**Group 3 (Count 8, Minor Victim #3, pseudo count)**

| | |
|---|---|
| Base (§2G2.1(a) via cross reference §2G2.2(c)) | 32 |
| Adjusted Offense Level | 32 |

**Group 4 (Count 8, Minor Victim #4, pseudo count)**

| | |
|---|---|
| Base (§2G2.1(a) via cross reference §2G2.2(c)) | 32 |
| Adjusted Offense Level | 32 |

**Group 5 (Count 8, Minor Victim #5, pseudo count)**

| | |
|---|---|
| Base (§2G2.1(a) via cross reference §2G2.2(c)) | 32 |
| Minor 12 to 15 years old (§2G2.1(b)(1)(B)) | +2 |
| Adjusted Offense Level | 34 |

**Group 6 (Count 8, Minor Victim #6, pseudo count)**

| | |
|---|---|
| Base (§2G2.1(a) via cross reference §2G2.2(c)) | 32 |
| Minor younger than 12 years old (§2G2.1(b)(1)(A)) | +4 |
| Adjusted Offense Level | 36 |

**Group 7 (Count 8, Minor Victim #7, pseudo count)**

| | |
|---|---|
| Base (§2G2.1(a) via cross reference §2G2.2(c)) | 32 |
| Minor 12 to 15 years old (§2G2.1(b)(1)(B)) | +2 |
| Adjusted Offense Level | 34 |

| | |
|---|---|
| Most Severe Group (Group 1) | 38 |
| Grouping (§§3D1.3, 3D1.4) | +5 (for 6 units) |
| Pattern (§4B1.5(b)) | +5 |
| Acceptance (§3E1.1) | -3 |
| **Total Offense Level** | **45 adjusted to 43** |
| **Criminal History** | **I** |
| **Advisory Guidelines Range** | **Life (capped by statute at 600 months)** |

(Final PSR 15-20, 29, ¶¶ 64-118, 187).

At sentencing, this Court will have to resolve several of Defendant's objections to the Final PSR, calculate the applicable advisory guidelines range, impose an order of restitution, and issue a sentence that is sufficient but not greater than necessary.

## II. DEFENDANT'S OBJECTIONS TO THE FINAL PSR'S FACTUAL ALLEGATIONS SHOULD BE DENIED.

Defendant submitted numerous objections to the draft PSR's factual allegations.[1] Most of the objections are clarifying in nature and are immaterial. Evidence submitted by the government proves the validity of many of the allegations, and the government will not address those objections further.

Several objections, however, go to the heart of Defendant's criminal activity, background, and character. To clarify the record for purposes of this Court considering the information pursuant to 18 U.S.C. §§ 3553(a) and 3661, the government addresses those objections here. The government also submits several exhibits, all of which are identified in the exhibit list filed with this memorandum.

---

[1] Although the nature and quantity of Defendant's objections could call into question his acceptance of responsibility, the government continues to recommend Defendant receive a reduction under USSG §3E1.1. This Court should consider Defendant's acceptance (or lack thereof) in weighing the 18 U.S.C. § 3553(a) factors.

5

**The record supports the Final PSR's assertions that Defendant used "hidden cameras" to exploit children and produce child pornography.**

The Final PSR explains that Defendant "plac[ed] hidden cameras in areas where he knew minor females would be undressing," including locations at Defendant's Wicked Imagery photography studios. Defendant objects to those statements. (*See* ECF 57, at 1-2, ¶¶ 3, 10-12, 14 (objecting to draft PSR paragraphs 12, 30, 31, 32 38)). At one point, Defendant claims that "there were not cameras in the [photography studios] dressing rooms," while at other times, he suggests the cameras he used to create child pornography were not "hidden." (*Id.*). These objections should be overruled.

As an initial matter, Defendant's own statements eviscerate his claim that there were never any cameras in the dressing rooms of his photography studios. (ECF 57, at 1, ¶ 12). In the Plea Agreement, Defendant admitted that he "placed cameras in locations where he knew that minors would be changing clothes," including in "changing rooms at photography studios Defendant owned and operated in the Des Moines area." (ECF 49, at 4-5, ¶ 7(b)). The government's sentencing exhibits, which include excerpts of materials Defendant created using cameras placed in his studio dressing rooms, leave no doubt that Defendant's plea admissions are accurate. (Gov. Sent. Ex. 6).

The cameras Defendant used to produce child pornography were "hidden," that is "out of sight or not readily apparent." *Hidden*, Merriam-Webster's Collegiate Dictionary (10th ed. 2002). Unobjected-to portions of the Final PSR and evidence offered by the government establish that Defendant "concealed" and "obscure[d]," the

6

cameras from view, and that the cameras were "undisclosed" to the dozens of children Defendant sexually exploited. *Id.*

Defendant, for one, admits that on multiple occasions, he "conceal[ed] a camera" in a bathroom at his home to record Minor Victim #2 engaged in sexually explicit conduct. (Final PSR 13-14, ¶¶ 51-56). In fact, in child-pornography videos Defendant captured of Minor Victims #1 and #2, Defendant is seen arranging and hiding the cameras before the child enters the room. (*Id.*). Excerpts from two such videos appear below:




(*See* Gov. Sent. Ex. 7 (excerpt from video described in Final PSR ¶ 52); Gov. Sent. Ex. 8 (excerpt from video described in Final PSR ¶ 53)).[2]

On top of that, a witness stated that at one of Defendant's photography studios, there were hidden, smoke-detector cameras "in the store's dressing room" and "in the photoshoot dressing room." (Final PSR 10, ¶ 32; Gov. Sent. Ex. 4, at 4-5, ¶¶ W, FF).

---

[2] Defendant further claims that the three video files he captured of Minor Victim #2 are actually "all the same file." (ECF 57, at 2, ¶ 22 (objecting to draft PSR paragraphs 51-54)). But the evidence contradicts that claim. Metadata indicates that the three files were captured on different dates, (Final PSR 13-14, ¶¶ 51-55), and in each video, Defendant appears in different clothing, (*see* Gov. Sent. Exs. 7, 8).

7

Defendant agrees that he installed at least one camera in a smoke detector at one studio. (ECF 57, at 1, ¶ 3). Investigators have corroborated the foregoing statements, recovering from Defendant's Compatly hard drive child pornography which was taken from cameras placed in dressing areas at Defendant's photography studio. Excerpts of these files appear below and show the dressing areas Defendant recorded:


(sometimes the black curtain was not visible in this changing room)







(Gov. Sent. Ex. 6, at 1-4).

Most importantly, none of the victims knew Defendant had placed cameras in areas where they would be unclothed. Both Minor Victims #1 and #3, for example, told investigators that they were "not aware there was a camera" in the dressing areas of Defendant's photography studio. (Gov. Sent. Ex. 1, at 4, ¶ M; Gov. Sent. Ex. 4, at 5, ¶ GG). Minor Victim #5 reported similarly, stating that she never observed anything in the dressing rooms of Defendant's photography studios suggesting that the areas were not private. (Gov. Sent. Ex. 2, at 5, ¶ M).

In short, Defendant concealed or obscured the cameras from his victims. He never told the victims he was recording them while they undressed, unknowingly exposing their naked bodies to the cameras. Investigators and witnesses who have reviewed Defendant's child pornography concur that Defendant used hidden, surreptitious cameras to create the content. (ECF 42, at 11-14; Gov. Sent. Ex. 4, at 2-4, ¶¶ I, J, K, N, W). This Court should reach the same conclusion.

**The Final PSR accurately states that Defendant possessed "internet-based" child pornography.**

Contrary to statements in the Final PSR, Defendant argues that none of the child pornography in his possession came from the internet. (ECF 57, at 2-3, ¶¶ 13, 23, 42 (objecting to draft PSR paragraphs 36, 57, and 209)). But the evidence contradicts his position.

Defendant possessed hundreds of images and videos of child pornography, some of which was at one point observed on his iPad. (Final PSR 11, 14 ¶¶ 36, 57; Gov. Sent. Ex. 4, at 3, ¶¶ M, N). On Defendant's Compatly hard drive, investigators located child-pornography files which depicted logos or other information identifying the website from which the content was accessed. (Gov. Sent. Ex. 12). Other files were iPad screenshots captured from the Safari internet browser. (*Id.*). Those screenshots included an internet address and showed specific webpages—webpages which offered child pornography for purchase, and which displayed minor children engaged in sexually explicit conduct. (*Id.*). For example:

- One webpage depicts three female children; the genitals of two children are visible to the viewer. The webpage states, "Our site provides access to private

9

collection of real Ukrainian, Belarus and Bulgarian lolitas, shy pre-teens, innocent schoolgirls."[3] (Gov. Sent. Ex. 12, at 1).

- Another webpage displays roughly six female children, all naked. The webpage reads, "Hottest girls on the net inside!" and "pink skin smells like a children soap." (*Id.* at 3).

- A webpage shows multiple nude, prepubescent children. The webpage states that the content on the webpage is for sale, and it says, "elusive uncensored lolita images can grant you perhaps the best pleasure of your lifetime," "All the images are uncensored and were made with parental permission." (*Id.* at 2).

- Other webpages appear to be galleries of images of child pornography. (*Id.* at 4-6).

Defendant's collection of child pornography, moreover, included files which had been recovered by law enforcement in prior, unrelated child-pornography investigations. For instance, several files Defendant possessed were identified by hash value, and others depicted victims from five known child-pornography series. (Final PSR 11, 14, ¶¶ 36(ii), 57, 59).

On this record, there is no doubt some of Defendant's child pornography came from the internet. (*See, e.g.*, ECF 42, at 9-11 (investigator's sworn testimony about finding internet-based child pornography on Defendant's hard drive)).

### III. DEFENDANT'S OBJECTIONS TO THE GUIDELINES CALCULATIONS IN THE FINAL PSR SHOULD BE REJECTED.

Defendant, essentially, objects to the Final PSR's guidelines calculations on two grounds. Neither ground bears weight, and this Court should reject the objections.

---

[3] A "lolita" is "a precociously seductive girl." *Lolita*, Merriam-Webster's Collegiate Dictionary (10th ed. 2002). The term originates from a novel, *id.*, and is part of the lexicon used by child pornographers and child-pornography websites.

**The Final PSR correctly scores Defendant's conviction for possession of child pornography.**

Defendant objects to numerous paragraphs supporting the offense-level calculations for Defendant's conviction for possession of child pornography. (ECF 57, at 2-3, ¶¶ 25-31 (defendant objecting to Final PSR paragraphs 75, 80-81, 87, 92-93, 98, 100, 104-105, 110)). Although Defendant fails to specify the grounds for the objections, it appears he takes issue with the application of (a) the cross-reference in USSG §2G2.2(c)(1) to USSG §2G2.1, and/or (b) the "Special Instruction" in USSG §2G2.1(d) requiring the creation of "pseudo counts."

But the Final PSR correctly calculates the offense level for Defendant's possession-of-child-pornography conviction. The Final PSR begins, as it should, in USSG §2G2.2, the guideline applicable to violations of 18 U.S.C. § 2252(a)(5)(B). The cross reference in §2G2.2(c)(1) provides that where "the offense involved causing . . . a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct"— *i.e.*, the production of child pornography—USSG §2G2.1 should be applied. Defendant pleaded guilty to one count of producing child pornography, and he admitted that he produced child pornography with numerous minor females, including, but not limited to, Minor Victims #1, 3, 4, 5, 6, and 7. (ECF 49, at 4-5). Accordingly, the Final PSR shifts its focus to USSG §2G2.1.

Next, the Final PSR uses §2G2.1(d)(1) to create "pseudo counts" for Defendant's conduct with each of Minor Victims #1 and #3 through #7. Section 2G2.1(d)(1) states that "[I]f the offense involved the exploitation of more than one minor," then "the exploitation of each minor" shall be treated as if it "had been contained in a separate count of conviction." The Final PSR, as a result, forms

"pseudo-count" groups for each of those six minors, correctly scoring the offense levels applicable to each of the groups. That, too, is the right approach.

Indeed, the Eleventh Circuit in *United States v. Martin*, 291 F. App'x 765 (11th Cir. 2008) (unpublished), endorsed this exact procedure. There, as here, the defendant offered photography services to minors; he produced child pornography under the guise of his legitimate photography business; and he possessed child pornography. *Id.* at 766-67. The defendant pleaded guilty to one count of production and one count of possession. *Id.* On appeal, the circuit court held that the proper way to score the defendant's guidelines range for purposes of his conviction for possession of child pornography was to (1) apply the cross-reference in USSG §2G2.2(c) to §2G2.1, and (2) follow the "special instruction at USSG §2G2.1(d)(1) to create pseudo-counts" for the additional child victims depicted in the defendant's collection of child pornography he personally produced. *Id.* at 769-70. The court then explained that the defendant's production and possession of child pornography for each child victim should be scored in a separate group. *Id.* at 769-72.

The Final PSR follows the guidance of *Martin* (and first and foremost, the text of the guidelines) to a tee as to the child victims referenced in the Indictment, and it correctly scores each of the groups for the Indictment's seven victims.

The Final PSR, in that way, actually gives Defendant a break. Applying the guidelines and *Martin*, the Final PSR should have created "pseudo-count" groups for each child victim depicted in Defendant's library of child pornography that he produced personally, which would include groups for the seventeen-year-old with whom Defendant had a sexual relationship, her two teenage friends, and the

12

numerous other children Defendant recorded at his photography studios. (Final PSR 6-8, 20-21, ¶¶ 12-19, 119-25). The Final PSR's generosity to Defendant in this regard, however, has no effect on Defendant's total offense level or the applicable advisory guidelines range, both of which are accurately set forth in the Final PSR. Thus, Defendant's objections should be denied.[4]

---

[4] Still, the Final PSR gets it quite wrong in concluding that Defendant's 2005 conduct with his teenage girlfriend and her friends is not "relevant conduct" for purposes of his conviction for possession of child pornography. (Final PSR 20-21, ¶¶ 119-25; *id.* at 53-54). The Final PSR's error appears to be based on its belief that because Defendant produced the child pornography with his girlfriend and her friends in 2005, not between 2013 and 2015, it could not be part of relevant conduct. (Final PSR 53-54).

Perhaps that would be true if Defendant had been convicted of only *production* of child pornography. But, here, Defendant pleaded guilty to possession of all the child pornography on his Compatily hard drive, which included visual depictions of those three children. The Final PSR concedes that Defendant's possession of child pornography he produced with those three victims is part of his "offense"—it includes that content in tabulating the amount of child pornography in Defendant's collection. (Final PSR 14, ¶ 57). *A fortiori* those three victims are part of Defendant's relevant conduct, and his creation of the child pornography with those victims and with the dozens of other identified and unidentified victims is part of his "offense" as that term is defined in the guidelines. USSG §1B1.3; *Martin,* 291 F. App'x at 771 ("Here, the identifiable minors depicted in the images that Martin produced are the victims of his production offenses as well as the victims of his possession offenses. Also, the production of the images of each victim and the possession of the images of each victim can be properly characterized as the same act or transaction. . . . The instant that Martin produced the images by operating his camera, he also possessed the images on his camera . . . ." (internal citation omitted)).

Although the Final PSR's error makes no difference in this case, other cases will undoubtedly be different. A similarly flawed conclusion, in a case on different facts, could call into doubt whether a victim is entitled to restitution, to make a victim-impact statement, or to obtain other relief afforded to crime victims. That the error is immaterial here merely reinforces the importance of getting the decision right, even though this Court need not decide the issue in this case.

### The Final PSR correctly counts the five-level "pattern" enhancement in USSG §4B1.5(b).

Defendant also disputes the five-level pattern enhancement in USSG §4B1.5. That guideline applies where (1) the defendant has been convicted of a "covered sex crime," (2) neither §4B1.1 nor §4B1.5(a) applies, and (3) "the defendant engaged in a pattern of activity involving prohibited sexual conduct." It is undisputed that a conviction under 18 U.S.C. § 2251 is "a covered sex crime," and that Defendant is not subject to §4B1.1 or §4B1.5(a). USSG §4B1.5, comment. (n.2) (defining "covered sex crime" to include convictions for an offense "perpetrated against a minor" under chapter 110 of the United States Code). So, the sole issue up for debate is whether the third requirement is met.

And by Defendant's own admissions, he "engaged in a pattern of activity involving prohibited sexual conduct." "Prohibited sexual conduct" includes "the production of child pornography," USSG §4B1.5, comment. (n.4(A)), and a "pattern" of such conduct is complete when the defendant "on at least two occasions" ("whether during the course of the instant offense" or not) produced child pornography "with a minor," USSG §4B1.5, comment. (n.4(B)). As Defendant said in his Plea Agreement, he "produced" child pornography depicting numerous minor children, "including content depicting Minor Victims #1 through #7, and others." (ECF 49, at 4-5, ¶ 7(g); *see, e.g.*, *id.* at ¶ 7). There, therefore, can be no legitimate dispute: the five-level enhancement in §4B1.5(b) should be imposed.

## IV. FORFEITURE SHOULD BE ORDERED AND IF ANY VICTIM REQUESTS RESTITUTION, IT SHOULD BE AWARDED.

In his Plea Agreement, Defendant agreed to forfeit certain property and to pay restitution in an amount to be determined by this Court to any of the victims depicted in his collection of child pornography. (*See* ECF 49, at 4-5, 9-11, ¶¶ 7, 16-18, 21). The government has filed its motion for a preliminary order of forfeiture, and this Court should grant that motion and ultimately issue a final order to the same effect. (ECF 58).

As to restitution, to date, none of the victims have requested such relief. The government will continue to satisfy its obligations under the Crime Victims' Rights Act to ensure that the victims "are notified of, and accorded, the rights" they have under the law, including their right to "full and timely restitution." 18 U.S.C. § 3771(a)(6), (c)(1). In the event a victim seeks restitution, the government will raise the matter at the sentencing hearing.

## V. THE SPECIAL CONDITION OF SUPERVISED RELEASE CONCERNING DEFENDANT'S ACCESS TO THE INTERNET SHOULD BE IMPOSED.

Defendant contends that because he did "not use[]" the internet to commit his crimes, the special condition of supervised release requiring that he obtain approval from a probation officer before using or possessing any internet-capable device should not be enforced. (Final PSR 33, ¶ 209; ECF 57, at 2, ¶ 42). But Defendant's premise is flawed. As set forth above, the government has established by a preponderance of the evidence that Defendant used the internet to access, view, and collect child pornography. (*See* Section II *supra*). The condition, consequently, should be imposed.

15

*See, e.g.*, *United States v. Norris*, 62 F.4th 441, 451 (8th Cir. 2023) (citing cases affirming similar conditions).

### VI. THE 18 U.S.C. § 3553(a) FACTORS SUPPORT A 360-MONTH TERM OF IMPRISONMENT

Based on the sentencing factors set forth in 18 U.S.C. § 3553(a), a term of imprisonment of 360 months is "sufficient but not greater than necessary." The sentence accounts for all the aggravating and mitigating factors presented by Defendant and his criminal conduct. That sentence specifically reflects the scope, duration, and harm caused by Defendant's crimes, his decision to continue exploiting children when he knew he was engaged in wrongdoing, and the harm victims have endured as a result of his conduct.

The nature and circumstances of Defendant's criminal conduct are extreme. Defendant, for years and on "well over one hundred occasions," sexually exploited, and attempted to sexually exploit, numerous minor females. In 2005, Defendant, who was roughly 42 years old, entered a romantic relationship with a seventeen-year-old girl, during which he captured content of the girl and two of her teenage friends engaged in sex acts. (Final PSR 20-21, ¶¶ 119-25; Gov. Sent. Ex. 5). In fall 2013, Defendant on multiple occasions placed a hidden camera in a bathroom at his residence where he knew a child in his care and custody was going to undress and bathe, recording the child's naked body. (Final PSR 12-14, ¶¶ 41-56). Then, from at least 2013 to 2015, Defendant abused his position as a Des Moines-area photographer to cause numerous children to undress in areas of his photography studios where he had placed hidden cameras. The children unknowingly exposed their genitals,

anuses, breasts, and/or pubic areas to Defendant's cameras. *See* 18 U.S.C. § 2256(2)(A). Defendant, for years, stashed the child pornography he produced on his electronic devices.

Defendant even exploited the children during photo shoots. Unbeknownst to his victims, Defendant would "capture[] upskirt shots" of the children, homing in on "their genitals and pubic area." (Final PSR 6, ¶ 13). As part of a photo shoot in summer 2015, for instance, one victim "was sitting on the floor with her knees tucked up to her chest. Defendant then took multiple shots up [the victim's] skirt, including shots that were so clear and so zoomed-in that the viewer could observe the folds of the victim's labia majora through her underwear." (Final PSR 6-7, ¶ 13).

Defendant had one purpose—to use children to gratify his sexual desires. His photography business, Wicked Imagery, catered to children and teenagers, and to the dance teams and cheerleading squads in which they participated. Defendant, through the business, held "teen days," offered photoshoots specific to "cheerleaders and dancers," and provided "modeling" sessions. (Gov. Sent. Ex. 9). Defendant even offered some children to participate in "swimsuit" shoots, which required the children to dress and undress in bathing suits in areas where Defendant had placed hidden cameras designed to capture the children's naked bodies. (Final PSR 8, 11, ¶¶ 21, 39).

To lure potential victims into his photography studios, Defendant posted advertisements aimed at children and teenagers on social media. (Final PSR 9, ¶¶ 22-27). Some of those advertisements depicted victims of Defendant's crimes. (*Id.*; *see* Gov. Sent. Ex. 9). Defendant even got at least one victim to recruit other children

17

to visit his photography studios, where he then used them to create child pornography. (Gov. Sent. Ex. 2, at 4, ¶¶ E-F; Final PSR 8, ¶ 21).

After obtaining hidden-camera footage of children, Defendant "reviewed the recordings and captured screenshots of the most sexually charged portions of the videos." (Final PSR 6, ¶ 12). Defendant used computer software to select and create still images of the children's genitals, anuses, breasts, and/or pubic area, and he saved the images as new computer files, often including the victims' names in the filename in the format "[Victim Name]-1." (*Id.*).

At the same time, Defendant was amassing a hoard of child pornography. Defendant stored thousands of files of child pornography on his electronic devices, including on a Compatily hard drive. That hard drive contained over ten thousand child pornography files, including material which depicted prepubescent minors less than twelve years of age and which showed "adult males penetrating minor females." (Final PSR 11, ¶ 36).

Defendant's willfulness demonstrates the danger he poses to the community and the need to protect the public from further crimes. Despite having numerous opportunities to stop his perverse course of conduct, Defendant continued producing and possessing child pornography. For example:

- In November 2013, Minor Victim #2 reported Defendant to the police for possessing images of her naked and taking inappropriate pictures of her (Final PSR 12-13, ¶¶ 41-49). Defendant denied wrongdoing, and nothing ever came of the report. For at least another two years, Defendant continued to exploit scores of minor children to produce and collect child pornography.

- Again, in 2019, Defendant was "confronted" about the child pornography located on his electronic devices. (Final PSR 8, ¶ 29; Gov. Sent. Ex. 4, at 3-4, ¶ P). Still, Defendant maintained his collection of child pornography, stopping

only when federal officers searched and seized the collection, which included over 10,000 files containing child pornography.

Defendant is not stupid: He holds a college degree; he founded, owned, and operated multiple businesses; he served in the Navy as an intelligence analyst. (Final PSR 26-27, ¶¶ 167-68, 172-77). Each time he concealed a camera in a dressing room, took a photograph of a minor's genitals, or viewed child pornography, Defendant knew his actions were immoral and illegal. He nonetheless persisted, making a conscious decision to prioritize his own depraved sexual desires over the wellbeing of dozens and dozens of children.

Investigators have positively identified over twenty minor females Defendant used to created child pornography. Defendant possessed approximately 140 videos of those victims, who range from 8 to 17 years of age. (Final PSR 7-8, ¶ 16-17). And there are numerous other children depicted in Defendant's home-made child pornography, including "some of the youngest children," whom have yet to be identified. (Final PSR 8, ¶ 18).

The harm that all those children have suffered, and will continue to suffer, leaves no doubt a 360-month prison sentence is necessary to provide just punishment. Defendant had years-long relationships with some victims. (Gov. Sent. Ex. 10; Final PSR 11, ¶ 40). Victims placed their complete trust in Defendant, trust that Defendant has "shattered." (Gov. Sent. Ex. 11, at 1). Not only do victims have trouble trusting others—they struggle to have faith in themselves. Defendant's actions have destroyed his victims, and only time may allow them to recover.

## CONCLUSION

For the reasons set forth above, the government respectfully requests that the Court impose a 360-month term of imprisonment, award any restitution requested by the victims, and order Defendant to forfeit property as set forth in the government's motion for a preliminary order of forfeiture.

Respectfully submitted,

Richard D. Westphal
United States Attorney

By: */s/ Kyle J. Essley*
Kyle J. Essley
Adam J. Kerndt
Assistant United States Attorneys
Neal Smith Federal Building
210 Walnut Street, Suite 455
Des Moines, Iowa 50309
Tel: (515) 473-9300
Fax: (515) 473-9292
Email: Kyle.Essley@usdoj.gov

CERTIFICATE OF SERVICE
I hereby certify that on January 2, 2025, I
electronically filed the foregoing with the
Clerk of Court using the CM ECF system.  I hereby
certify that a copy of this document was served
on the parties or attorneys of record by:
_____U.S. Mail _____ Fax _____Hand Delivery

 X   ECF/Electronic filing    ___Other means

UNITED STATES ATTORNEY
By: */s/Alisha Rankin, Paralegal Specialist*